IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MATTHEW L., by and through his Mother, TERESA L., | ) CIVIL NO.  07-00009 JMS/BMK |
| | ) |
| | ) ORDER AFFIRMING THE |
| Plaintiffs, | ) HEARINGS OFFICER'S OCTOBER |
| | ) 23, 2006 ORDER GRANTING |
| vs. | ) RESPONDENT'S MOTION TO |
| | ) DISMISS WITH REGARD TO |
| DEPARTMENT OF EDUCATION, | ) PETITIONERS' REQUEST FOR |
| STATE OF HAWAII, | ) REIMBURSEMENT FOR PRIVATE |
| | ) PLACEMENT |
| Defendant. | ) |
| _____ | ) |

**ORDER AFFIRMING THE HEARINGS OFFICER'S OCTOBER 23, 2006 ORDER GRANTING RESPONDENT'S MOTION TO DISMISS WITH REGARD TO PETITIONERS' REQUEST FOR REIMBURSEMENT FOR PRIVATE PLACEMENT**

## I.  INTRODUCTION

On January 9, 2007, Plaintiff Matthew L., by and through his mother, Teresa L. (collectively, "Plaintiffs"), filed a Complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, seeking reversal of the Administrative Hearings Officer's October 23, 2006 Order concluding that Plaintiffs did not timely file their request for a due process hearing for reimbursement for Matthew's special education placement.[1]  Plaintiffs claim that they did not receive notice of the 90-day limitations period, while the Hearings

_____

[1] Hearings Officer Richard A. Young presided over the due process hearing.

Officer found that the Defendant Department of Education ("DOE") had provided Plaintiffs with a current copy of the Procedural Safeguards Notice containing the 90-day filing requirement.  The Hearings Officer subsequently decided that the DOE did not comply with the IDEA and failed to offer Matthew a free appropriate public education ("FAPE"), but denied Plaintiffs reimbursement for the cost of Matthew's special education placement.

A hearing was held on October 29, 2007.  Based on the following, the court AFFIRMS the Hearings Officer's decision denying Plaintiffs reimbursement for the cost of private placement for the 2005-2006 school year.

## II.  BACKGROUND

**A.     Matthew's IEPs**

Matthew is an elementary school student eligible for special education under the IDEA.  Matthew was a student at Wheeler Elementary until January 11, 2005 when his mother, Teresa, began schooling him at home.  Teresa had been certified as both a regular and special education teacher and had previously worked for the DOE.  Matthew's Individual Education Plan ("IEP") was to be reviewed annually in November.

### 1.    *November 2004 IEP and Due Process Hearing*[2]

On May 23, 2005, Plaintiffs filed a request for a due process hearing on Matthew's November 12, 2004 IEP, which covered the 2004-2005 school year. Following the November 12, 2004 IEP, Teresa unilaterally removed Matthew from Wheeler Elementary.  The DOE conducted three IEPs prior to Plaintiffs' filing of the May 23, 2005 due process hearing request, which were dated November 12, 2004, January 13, 2005, and February 3, 2005.  The May 23, 2005 hearing request did not identify which IEPs Plaintiffs were challenging.  The DOE conducted subsequent IEPs dated May 27, 2005, June 14, 2005, and November 4, 2005.  At the April 2006 due process hearing, the November 12, 2004, January 13, 2005, February 3, 2005, May 27, 2005, and June 14, 2005 IEPs were introduced into evidence (all of which covered the 2004-2005 school year).  The DOE also introduced into evidence the November 4, 2005 IEP, which covered the 2005-2006 school year.

The Hearings Officer issued a decision on June 26, 2006 and limited its scope to those IEPs conducted prior to May 23, 2005 when Plaintiffs filed their

---

[2] The facts in the following sub-section are drawn from Chief United States District Judge Helen Gillmor's Order Affirming in Part and Reversing in Part the June 26, 2006 Findings of Fact, Conclusions of Law and Decision in *Teresa L. v. Dep't of Educ.*, Civ. No. 06-00399 HG-LEK (D. Haw. Aug. 3, 2007).  Doc. No. 33.

request for a due process hearing.  The decision found that the November 12, 2004

IEP did not offer Matthew a FAPE and ordered the DOE to reimburse Teresa for

the cost of Matthew's home-based program from January 10, 2005 up to and

including June 16, 2005.  The decision did not award reimbursement for the period

after June 16, 2005 and concluded that the May 23, 2005 hearing request did not

address the issue of Matthew's 2005-2006 school year IEP or reimbursement, and

ruled that Plaintiffs would not be allowed to "piggy back" this second claim

relating to the 2005-2006 school year to the due process hearing.

  Judge Gillmor upheld the Hearings Officer's decision concluding that

"the Hearings Officer properly refused to rule as to the appropriateness of the

November 4, 2005 IEP for the 2005-2006 school year that was offered to Plaintiffs

after they filed their request for due process hearing," because "the May 23, 2005

request for due process hearing was never amended nor expanded."  *Teresa L. v.

Dep't of Educ.*, Civ. No. 06-00399 HG-LEK (D. Haw. Aug. 3, 2007).  Judge

Gillmor, however, held that the Hearings Officer erred in limiting reimbursement

to the period from January 10, 2005 to June 16, 2005, and therefore, Judge

Gillmor concluded that Plaintiffs were entitled to reimbursement for the entire

school year, up to and including November 4, 2005.

### 2.    June 2005 IEP

Teresa attended the June 14, 2005 IEP meeting at Wheeler Elementary. Administrative Record on Appeal ("ARA") at 85. Also at the meeting was special education teacher Amy Williams. *Id.* The IEP meeting notes indicate that Teresa "verbally shared with the [IEP] team a prepared statement. She informed the team of the due process request and that she rejects the PWN[3] dated 5/31. After reading her statement, [Teresa] chose to adjourn the IEP meeting." *Id.* The IEP dated June 14, 2005 included placement at Wheeler Elementary, which Teresa rejected at the June 14, 2005 meeting, opting instead to continue Matthew's home-based program. Over one year later, on July 13, 2006, Teresa filed a request for a due process hearing relating to the June 14, 2005 IEP and a subsequent November 4, 2005 IEP. ARA at 3-6.

### 3.    November 2005 IEP

On October 21, 2005, Wheeler Elementary Principal Joe Lee wrote to Plaintiffs, inviting them to Matthew's annual IEP meeting and providing three possible meeting dates. Respondent's Exs. ("RE") at ML 214. The letter also states:

---

[3] PWN refers to a Prior Written Notice of Department Action. *See Janet G. v. Dep't of Educ.*, 410 F. Supp. 2d 958, 961 (D. Haw. 2005).

> Enclosed is a consent for release of information to Wheeler
> Elementary School.  Please return the consent for release of
> Information and any current academic progress reports you
> have with regard to Matthew by 8:00 A.M. on October 28,
> 2005.  This information will be used to develop Matthew's
> annual IEP.

*Id.*  Teresa responded by letter dated October 24, 2005, notifying Principal Lee

that the parents would not be attending any IEP meetings until a decision was

issued in their pending due process hearing.  RE at ML 215.  The letter states:

> [A]s you are aware, a Due Process Hearing is being conducted
> as I am writing this letter to you.  Therefore, I am sure that you
> understand that we need to wait for the final decision from this
> hearing to conduct and Individualized Educational Program in
> Matthew's most current educational environment.
> Additionally, all academic means and requests will be
> discussed at the next Individualized Educational Program
> meeting after the completion of the Due Process Hearing.  I
> will ensure you that we will be in contact after the final
> decision ha[s] been made.

*Id.*  Principal Lee then responded by letter dated October 28, 2005, stating:

> [A]lthough you have indicated that you do not plan to attend
> the IEP meeting until after the Due Process Hearing is
> complete, we are required to maintain a current IEP.  We will
> be meeting on Friday, November 4, 2005 to discuss Matthew's
> present levels of performance and update his Individualized
> Education Plan.  We would like to invite you to attend and to
> provide any current performance data you may have.

*Id.* at ML 216.

Matthew's parents did not attend the November 4, 2005 IEP meeting; the IEP meeting notes state: "Parents were not in attendance at this meeting. [Parents] did inform the school in writing that they did not plan to attend until the completion of a current due process hearing." ARA at 134. Teresa testified that she was out of town on November 4, 2005 when the IEP team met. 11/02/06 Transcript ("Tr.") Vol. I at 166.

On November 7, 2005, the DOE sent a copy of the November 4, 2005 IEP to Plaintiffs by certified mail, return receipt requested. RE at ML 218-21. Delivery was attempted twice, but the document was returned to the DOE because it was not claimed by Plaintiffs.[4] Teresa acknowledged that the United States Postal Service left her a "pink slip," which said that she had a package from the DOE, and a subsequent notice that the package had been returned, but testified that she did not follow up with the Postal Service or Wheeler Elementary because

---

[4] The envelope sent to Plaintiffs indicates that the first attempted delivery was November 9, 2005; the second attempt was on November 14, 2005; and the envelope was returned to the DOE on November 24, 2005. RE at ML 218. Teresa testified that on November 9, 2005, the family was not at home, but was at the airport to fly to California for a family funeral. 11/02/06 Tr. Vol. I at 103. They returned to Honolulu on November 13, 2005, but were not at home on November 14, 2005 because Matthew had a doctor's appointment. *Id.* at 105. Teresa testified that she did not look through any of her mail until returning home from Tripler Army Medical Center in Honolulu, where the family stayed from November 17 to 23, 2005 while Matthew had surgery. *Id.* at 107, 110.

she was very busy with family circumstances at the time.[5] 11/02/06 Tr. Vol. I at 170-71.  When asked by her attorney, "So you didn't have a chance to get to the post office to pick this up?",  Teresa responded, "No."  *Id.* at 108.

Teresa claims that she never received a copy of the November 4, 2005 IEP.  *Id.* at 99.  She testified that the first time she saw the November 4, 2005 IEP was at the due process hearing regarding the 2004-2005 school year held on April 20, 2006.  *Id.* at 124.  Matthew remained in his home-based program following the November 4, 2005 IEP; Teresa continued to teach Matthew at home and did not place him at Wheeler Elementary.  On July 13, 2006, Teresa filed a request for a due process hearing relating to the June 14, 2005 IEP and the November 4, 2005

---

[5] At the November 2, 2006 hearing, Teresa was cross-examined regarding the unclaimed mailing: "you were aware that they were going to be holding an IEP for your son, didn't you expect that this could be some document related to that IEP meeting?"  She replied:

> At the time, in November, it was a very busy schedule.  My mind was not on the Department of Education.  My mind was to make sure I was teaching Matthew, at the same time dealing with family issues I had going on, as well as trying to make sure his surgery was -- he came out of surgery.  And at the same time, I also was dealing with my husband's issue of deployment.

11/02/06 Tr. Vol. I at 171.  Teresa further testified that she did not know that there was an IEP document.  *Id.* at 109.

IEP, seeking reimbursement from the DOE for Matthew's home-based program. ARA at 3-6.[6]

**B.    Due Process Hearing Below**

*1.    DOE's Motion to Dismiss*

On September 25, 2006, the DOE moved to dismiss Plaintiffs' request for a due process hearing because Plaintiffs did not file their request within 90 days of Matthew's unilateral placement as required by Hawaii Revised Statutes ("HRS") § 302A-443(a)(2).  In opposition, Plaintiffs originally argued that the DOE had no communication with them between June 14, 2005 and July 17, 2006. Plaintiffs claimed that they never received notice of the 90-day filing requirement and that the "DOE had notice that [Plaintiffs] had continued Matthew's placement at home and were planning to seek reimbursement as early as January 2005 and again in June 2005 just prior to the enactment of Act 158, then again in November 2005."  ARA at 125, 128.  In response to the DOE's submission of Amy Williams' declaration, Plaintiffs later claimed that the DOE sent them the wrong Procedural Safeguards Notice (an outdated "gold" pamphlet) in October 2005.

The DOE claims that copies of a Meeting Notice and a Procedural Safeguards Notice (the revised July 1, 2005 "white" pamphlet) were sent to

_____

[6] The request for a due process hearing was received by the DOE on July 17, 2006.

Plaintiffs on October 21, 2005.  Amy Williams, Matthew's Care Coordinator at Wheeler Elementary, states that the white Procedural Safeguards Notice was sent to Plaintiffs on October 21, 2005 via certified mail, which was signed for by Matthew's father, Michael L., indicating receipt on October 24, 2005.  ARA at 160-61, Williams Decl. ¶¶ 1, 2, 7, 8.

At the October 9, 2006 hearing on the DOE's motion to dismiss, Teresa testified that Michael L. signed for the package, but that she opened it. 10/09/06 Tr. at 13.  She testified that the package included the gold pamphlet, which "is the same pamphlet that's been around for a couple of years.  And when I read it, no limitation of 90 days.  Just that I had to have things done for two years." 10/09/06 Tr. at 13-14.  She stated that she saved all of the envelopes (and their contents) received from the DOE.  10/09/06 Tr. at 12.  She further testified, "I just receive what I get in the mail and then I respond to what I get."  10/09/06 Tr. at 17. According to Teresa, the first time she saw the white pamphlet was in August, 2006.  10/09/06 Tr. at 14.

On October 23, 2006, the Hearings Officer entered an Order Granting Respondent's Motion to Dismiss With Regard to Petitioner's Request for Reimbursement for Private Placement ("October 23, 2006 Order").  The October 23, 2006 Order identified the relevant issue as "when were [Plaintiffs] informed by

10

the DOE of the 90 day limitation period in HRS § 302A-443(a)(2)." ARA at 314.
The Hearings Officer concluded "that based upon the facts and circumstances, the
evidence has shown that the DOE did send parents the July 1, 2005 version of the
Procedural Safeguards Notice for Parents and Students." *Id.* at 315.  The October
23, 2006 Order states: "The Hearings Officer finds that the Declaration of IEP care
coordinator Amy Williams, who declares that the July 1, 2005 Procedural
Safeguards Notice for Parents and Students was sent via certified mail to parents
and received by Mr. [L.] on October 24, 2005, to be credible." *Id.* at 316A.[7]  The
Hearings Officer did not find Teresa's testimony to be credible and listed several
reasons to support this finding:

> [I]f Mother's testimony is true, the DOE would have had
> to send Petitioners the wrong pamphlet, the outdated, April
> 2004 version. . . .  The fact that the packet was sent via certified
> mail, return receipt requested, shows that the DOE wanted
> proof that the parents received the packet.  The circumstances
> surrounding this mailing include the fact that parents had
> previously filed for impartial hearing in SY0506-079 against
> the DOE on May 23, 2005.  One of the issues in SY0506-079
> was a request for reimbursement for a unilateral special
> education placement.  Given the importance of the service of
> this packet upon parents, the circumstances suggest that the

---

[7] The ARA as transmitted by the State of Hawaii Department of Commerce and
Consumer Affairs did not include page 6 of the October 23, 2006 Order; instead, ARA at 316 is
page 5 and ARA at 317 skips to page 7.  The DOE in its Reply submitted the missing page 6 of
the October 23, 2006 Order and Plaintiffs did not object to its inclusion in the administrative
record.  To avoid confusion, the court refers to page 5 of the October 23, 2006 Order as ARA at
316 and the omitted page 6 of the October 23, 2006 Order as ARA at 316A.

DOE would send parents the current July 1, 2005 pamphlet with its updated notice information.

* * *

Mother was present at the hearing in April 2006 when the 90 day requirement was discussed. Hearing Officer Alm's Decision in DOE-SY0506-079, which contained a written discussion of the 90 day requirement, was issued on June 26, 2006. This is evidence to show that Mother had actual notice of the 90 day requirement prior to the August 2006 day she claimed she was first aware of the 90 day requirement. Even if this is not dispositive . . . , it weighs against Mother's credibility, as Mother testified that the first time she was aware of the 90 day requirement was in August 2006.

It is difficult to imagine that a special education teacher, who is also the parent of a student with a disability, and who had previously been awarded reimbursement for Student's home program through a June 26, 2006 written decision, was not aware of the 90 day requirement prior to August 2006.

*Id.* at 315-16A (footnote omitted). The Hearings Officer also imputed the knowledge of Plaintiffs' attorney to his clients regarding the application of the 90-day requirement. *Id.* at 316A-17. The Hearings Officer held that because Plaintiffs filed their request for a due process hearing on July 13, 2006, well beyond 90 days of their receipt of the Procedural Safeguards Notice on October 24, 2005, their claims for reimbursement for unilateral special education placement should be dismissed.

//

//

12

### 2.    *Due Process Hearing*

The Hearings Officer held a hearing on November 2 and 3, 2006 to determine whether the June 14, 2005 and November 4, 2005 IEPs offered Matthew a FAPE.  The Hearings Officer entered an Order dated December 11, 2006, finding that the June 14, 2005 and the November 4, 2005 IEPs did not offer a FAPE and that the November 4, 2005 IEP meeting was held without at least one of Matthew's parents in attendance, in violation of the IDEA.  *Id.* at 438.  Based on the October 23, 2006 Order, the Hearings Officer did not award Plaintiffs reimbursement for private placement.

## C.    District Court Action

Plaintiffs filed their Complaint on January 9, 2007, asking the court to reverse the denial of their request for reimbursement for the 2005-2006 school year.  Plaintiffs filed their Opening Brief on August 13, 2007.[8]  The DOE filed its Answering Brief on September 12, 2007, which Plaintiffs replied to on September 26, 2007.

---

[8] Between the time Plaintiffs filed their Complaint and their Opening Brief, Judge Gillmor issued the Order Affirming in Part and Reversing in Part the June 26, 2006 Findings of Fact, Conclusions of Law and Decision.  *See Teresa L. v. Dep't of Educ.*, Civ. No. 06-00399 HG-LEK (D. Haw. Aug. 3, 2007).  Doc. No. 33.  The effect of Judge Gillmor's August 3, 2007 Order was to award reimbursement for the entire 2004-2005 school year, up to and including November 4, 2005.

13

Plaintiffs argue that Teresa first received actual notice of the 90-day filing period in August 2006, but at no time did she testify or declare that she was unaware of the 90-day requirement. They further claim that Teresa's presence at the April 20, 2006 due process hearing in which the 90-day requirement was discussed does not constitute adequate notice of the procedural safeguards. Plaintiffs also argue that because they did not receive a copy of the November 4, 2005 IEP until the April 2006 due process hearing, there was no "unilateral special education placement" to trigger the 90-day requirement.

The DOE, on the other hand, argues that the date of the unilateral placement was June 14, 2005, which is the date of the first IEP challenged in the due process hearing request. Alternatively, the DOE argues that a unilateral special education placement occurred either (1) in January 2005 when Matthew was initially removed from Wheeler Elementary and began his home-based program, or (2) at the beginning of the 2005-2006 school year. The DOE further claims that because reasonable steps were taken to deliver the November 4, 2005 IEP to Plaintiffs, who did not claim the certified mail package, the 90-day requirement should not be tolled until the receipt of the IEP.

//

//

14

## III.  <u>STANDARD OF REVIEW</u>

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of the hearings officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).

The IDEA requires the following of the court:

> In any action brought under this paragraph, the court--
> (i)  shall receive the records of the administrative proceedings;
> (ii)  shall hear additional evidence at the request of a party;[9] and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).[10]  In *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206-07 (1982), the Supreme Court explained the court's role in reviewing an administrative decision in an IDEA case:

---

[9]  Neither party requested that the court hear additional evidence.

[10]  Prior to July 1, 2005, this provision was codified at 20 U.S.C. § 1415(i)(2)(B).

> [T]he provision that a reviewing court base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.  The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought.  The fact that § 1415(e)[11] requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to these proceedings.  And we find nothing in the Act to suggest that merely because Congress was rather sketchy in establishing substantive requirements, as opposed to procedural requirements for the preparation of an IEP, it intended that reviewing courts should have a free hand to impose substantive standards of review which cannot be derived from the Act itself.  In short, the statutory authorization to grant "such relief as the court determines is appropriate" cannot be read without reference to the obligations, largely procedural in nature, which are imposed upon recipient States by Congress.

See also City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 171 (1997) (citing Rowley for the proposition that the IDEA "contemplates deferential review of state administrative action").  The "fact-intensive nature" of IDEA proceedings "coupled with considerations of judicial economy render a more deferential approach appropriate."  Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1104 n.4 (9th Cir. 2007).

---

[11]  This provision now appears at 20 U.S.C. § 1415(i).

The Ninth Circuit has clarified the court's role in reviewing a

hearings officer's decision in an IDEA case:

> The proposition that the courts must give "due weight" raises the question of how much weight is "due." We held in *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987), that "[h]ow *much* deference to give state educational agencies . . . is a matter for the discretion of the courts." Following a First Circuit decision, we held in *Gregory K.* that the courts are to consider the findings "carefully and endeavor to respond to the hearing officer's resolution of each material issue," but the court "is free to accept or reject the findings in part or in whole." *Id.*
> When exercising its discretion to determine what weight to give the hearing officer's findings, one criterion we have found useful is to examine the thoroughness of those findings. The amount of deference accorded the hearing officer's findings increases where they are "thorough and careful."

*Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995)

(citations omitted; alterations in original). "The 'due weight' to be given is within

the discretion of the appellate court." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d

1115, 1126 (9th Cir. 2003), *superseded on other grounds by* 20 U.S.C.

§ 1414(d)(1)(b).

Where the Hearings Officer makes a credibility determination of a

witness, due weight must be accorded to that determination because "[t]raditional

notions of the deference owed to the fact finder compel this conclusion." *Amanda*

*J. v. Clark County Sch. Dist.*, 267 F.3d 877, 889 (9th Cir. 2001). "This standard

comports with general principles of administrative law which give deference to the unique knowledge and experience of state agencies while recognizing that a [Hearings Officer] who receives live testimony is in the best position to determine issues of credibility." *Id.; see also Ms. S.*, 337 F.3d at 1127 ("Normally, a finder of fact's determination of credibility receives deference on appeal, because access to live testimony is important to the credibility finding."); *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 n.4 (3d Cir. 2006) (holding that "if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight.  Specifically, this means that a District Court must accept the state agency's credibility determinations unless the nontestimonial, extrinsic evidence in the record would *justify* a contrary conclusion.  In this context the word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court.") (citation and quotation signals omitted; alterations in original).

The burden in this proceeding is on the Plaintiffs, the party challenging the administrative ruling.  *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1498 (9th Cir. 1996) ("As the party challenging the administrative ruling, the School District . . . had the burden of proof in district court.").

18

# IV.  ANALYSIS

Plaintiffs argue that their request for a due process hearing was timely because they did not receive actual notice of the 90-day time limit.  They further argue that the limitations period should be tolled because they did not receive the November 4, 2005 IEP and because there was no unilateral special education placement to trigger the 90-day filing requirement.

## A.    Ninety-Day Period for Requesting Due Process Hearing

Prior to June 24, 2005, a parent in Hawaii had two years in which to file a request for an impartial hearing to seek reimbursement of private placement. *See* 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years . . . or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.").  Act 158, effective June 24, 2005, amended HRS § 302A-443(a)(2), which now provides in pertinent part:

> An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; provided that the hearing is requested:
>
> \*\*\*
>
> . . . within ninety days of a unilateral special education placement, where the request is for reimbursement of the costs of the placement.

19

The IDEA requires the DOE to establish and maintain procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education[.]" 20 U.S.C. § 1415(a).  Based on the IDEA and various Hawaii regulations, United States District Court Judge David Alan Ezra concluded that the DOE could not invoke HRS § 302A-443 to shorten the limitations period (from two years to 90 days) absent actual notice to a student's parents.  *See Jaren L., by and through his mother, Shanelle L. v. Dep't of Educ.*, Civ. No. 06-00024 DAE-LEK (D. Haw. May 1, 2006).  This court has previously stated its agreement with Judge Ezra's analysis and conclusion.  *See Blake C., by and through his mother, Tina F. v. Dep't of Educ.*, Civ. No. 06-00335 JMS-KSC (D. Haw. Sept. 12, 2006); *Natalie M. et al. v. Dep't of Educ.*, 2007 WL 1186835 (D. Haw. Apr. 18, 2007).  *See also Dep't of Educ. v. Carl D.*, 695 F.2d 1154, 1156-58 (9th Cir. 1983) (discussing the importance of notice to parents where a short statute of limitations applies); *R.R. v. Fairfax County Sch. Bd.*, 338 F.3d 325, 331 (4th Cir. 2003) ("Courts adopting very short limitations periods have often imposed notice requirements to make limitations periods . . . consistent with the IDEA.").

Consequently, Plaintiffs had ninety days from the date on which they received actual notice of the ninety-day limitations period in which to file their

request for an impartial hearing seeking reimbursement of the costs of a unilateral special education placement.

**B.      Plaintiffs Received Actual Notice of the 90-Day Filing Requirement**

The parties dispute the date on which Plaintiffs received actual notice. The Hearings Officer concluded "that based upon the facts and circumstances, the evidence has shown that the DOE did send parents the July 1, 2005 version of the Procedural Safeguards Notice for Parents and Students."  ARA at 315.  The October 23, 2006 Order states: "The Hearings Officer finds that the Declaration of IEP care coordinator Amy Williams, who declares that the July 1, 2005 Procedural Safeguards Notice for Parents and Students was sent via certified mail to parents and received by Mr. [L.] on October 24, 2005, to be credible."  *Id.* at 316A.  The Hearings Officer did not credit Teresa's testimony that she received an outdated gold copy of the Procedural Safeguards Notice.

The court finds that the Hearings Officer's October 23, 2005 Order is sufficiently thoughtful, both in its factual findings and legal analysis, with respect to Plaintiffs' receipt of the current Procedural Safeguards Notice.  On this issue, the October 23, 2005 Order examines the relevant factual circumstances and live testimony, and applies the IDEA, HRS § 302A-443, and relevant case law in a reasoned manner.  Further, the court has conducted an independent review of the

record and agrees with the Hearings Officer's factual findings.  The court, in its

discretion, accords due weight to this aspect of the Order and particular deference

to the Hearings Officer's "thorough and careful" findings and credibility

determinations.  *See Ms. S.*, 337 F.3d at 1127 ("[A] finder of fact's determination

of credibility receives deference on appeal, because access to live testimony is

important to the credibility finding.").

Further, common sense supports the Hearings Officer's conclusion

that because Plaintiffs had previously challenged Matthew's IEPs and sought

reimbursement for private placement, the circumstances suggest that the DOE

would not send parents the outdated gold Procedural Safeguards Notice, but rather

sent the current July 1, 2005 pamphlet with its updated notice information, as

attested to by Amy Williams.

The white Procedural Safeguards Notice provided to Plaintiffs on

October 24, 2005 included the required procedural safeguards relating to the

opportunity to initiate due process hearings.  The notice states:

> If a parent disagrees with the Department regarding the
> availability of a free appropriate education in the public
> schools and has questions regarding the financial responsibility
> of the private placement, the parent may request a due process
> hearing.  A hearing must be requested for reimbursement of the
> costs of private placement within ninety (90) days of the
> parent's initial unilateral enrollment of the student in the
> private school or facility.

RE at ML 217.  Plaintiffs therefore received actual notice of the 90-day filing

requirement and the facts of the case do not permit tolling.[12]

Because Plaintiffs received actual notice of the 90-day requirement

on October 24, 2005, the court next examines when the 90-day requirement began

to run.

**C.      Events Prompting the Running of the 90-Day Filing Period**

The Hearings Officer did not specifically indicate when the 90-day

filing period was triggered.[13]  Because the Hearings Officer did not address the

date of the unilateral special education placement, the court reviews this issue de

novo.[14]

_____

[12] Under the IDEA, the limitations period for filing hearing requests "shall not apply to a
parent if the parent was prevented from requesting the hearing due to . . . the local educational
agency's withholding of information from the parent that was required under this subchapter to
be provided to the parent."  20 U.S.C. § 1415(f)(3)(D)(ii).  The Hawaii statute contains a similar
limitation; the ninety-day filing period shall not apply "if the parent or guardian was prevented
from requesting the hearing due to . . . [t]he department's withholding from the parent or
guardian information that was required by state or federal laws and regulations to provide a free,
appropriate public education to a child with a disability."  HRS § 302A-443(b)(2).
    The record shows that the DOE did not "withhold" required information from Plaintiffs.
The DOE sent the November 4, 2005 IEP via certified mail, return receipt requested.  After two
delivery attempts, the package was returned.  Although the documents were not received by
Plaintiffs until April 2006, the DOE did not purposefully "withhold" them, but rather, both
parties failed to follow-up on delivery after the initial failed attempts.

[13] The October 23, 2006 Order states: "Petitioners filed their request for impartial hearing
requesting reimbursement for home placement on July 13, 2006, well beyond 90 days of their
receipt of the July 1, 2005 Procedural Safeguards on October 24, 2005."  ARA at 316A.

[14] Because all the relevant facts are before the court, there is no need to remand the issue
to the Hearings Officer to determine the date of the unilateral special education placement.  *Cf.*

(continued...)

### 1.     *"Unilateral Special Education Placement" Generally*

HRS § 302A-443(a)(2) provides that a parent must file a request for a due process hearing "within ninety days of a unilateral special education placement."  The phrase is not ambiguous; read literally, a unilateral special education placement occurs when one party unilaterally (i.e., without the consent or agreement of the other party) enrolls or places the student in a special education program.  *See Makiko D. v. Hawaii*, 2007 WL 1153811, at *7 (D. Haw. Apr. 17, 2007).

But the phrase must be understood contextually; in each case, the court examines the surrounding circumstances to determine when the unilateral special education placement occurred.  For example, the court should not read the term in a manner that would permit parents to take advantage of the system designed to safeguard their procedural rights by skillfully avoiding a mechanism that would trigger the limitations period.  On the other hand, the DOE should not be permitted to claim that a parent made a unilateral special education placement

---

[14] (...continued)
*Jordison v. Keisler,* --- F.3d ---, 2007 WL 2472635, at *2 (9th Cir. Oct. 30, 2007) ("The government asks us to remand so that the agency may apply the modified categorical approach, but such a remand would be pointless, as the government concedes it has already submitted Jordison's complete record of conviction.  In these circumstances, there is no need to remand; we may decide the question ourselves.") (footnote omitted).

when the parent acted in good faith, yet the DOE failed to exercise reasonable care under the circumstances in notifying the parent of the offer of FAPE.

## 2.      *Parental Non-Participation and Failure to Receive IEP*

Plaintiffs argue that the 90-day limitations period cannot be triggered until a parent receives an IEP, rejects the IEP's offer of FAPE, and then unilaterally places the child in a private program.  From this premise, Plaintiffs argue that because they did not receive the IEP until April 20, 2005, their July 13, 2005 request for reimbursement was timely.  The DOE argues that it used reasonable means to provide the November 4, 2005 IEP to Plaintiffs and that because Matthew remained in his home-based program, Plaintiffs constructively rejected the offer of a FAPE.[15]

The IDEA requires prior written notice to parents when the DOE proposes, or refuses, to initiate or change the student's educational placement.  20 U.S.C. § 1415(b).  The IDEA's implementing regulations state: "The public agency shall give the parent a copy of the child's IEP at no cost to the parent."  34

---

[15] The record shows that Plaintiffs, without the consent or agreement of the DOE, continued Matthew's home-based program following Teresa's rejection of the June 14, 2005 IEP.  Although the DOE initially argued that a unilateral placement occurred at that point, the DOE acknowledged at the October 29, 2007 hearing that the effect of Judge Gillmor's August 3, 2007 Order was to remove this date from consideration, since it awarded reimbursement for the entire 2004-2005 school year, up to November 4, 2005.  *See Teresa L. v. Dep't of Educ.*, Civ. No. 06-00399 HG-LEK (D. Haw. Aug. 3, 2007).  Doc. No. 33.

C.F.R. § 300.345(f) (2005),[16] *accord* Hawaii Administrative Rules ("HAR") § 8-

56-36(i).  Although the DOE had procedures in place to ensure that Plaintiffs

received the required notice (even after Plaintiffs notified the DOE that they would

no longer participate in the development of Matthew's IEP),[17] and despite the

---

[16] The current provision, effective October 13, 2006, states: "The public agency must give the parent a copy of the child's IEP at no cost to the parent."  34 C.F.R. § 300.322(f) (2006).

[17] The IDEA requires that the following procedures be in place:

> (a) Establishment of procedures
> Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.
>
> (b) Types of procedures
> The procedures required by this section shall include the following:
> > (1) An opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child.
> > * * *
> > (3) Written prior notice to the parents of the child, in accordance with subsection (c)(1) of this section, whenever the local educational agency--
> > > (A) proposes to initiate or change; or
> > > (B) refuses to initiate or change,
> > > the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child.

20 U.S.C. § 1415.  Hawaii has established procedures in accord with this portion of the IDEA at HAR § 8-56-68 ("Prior notice by the department; content of notice").

DOE's attempted delivery via certified mail, return receipt requested, Plaintiffs did not receive the November 4, 2005 IEP until the April 2006 due process hearing. The IDEA does not make clear what standard is required of the DOE to ensure actual receipt of the IEP and corresponding offer of FAPE when parents refuse to participate in the IEP process until further notice.[18]

In *Union School District v. Smith*, 15 F.3d 1519 (9th Cir. 1994), the Ninth Circuit considered the school district's obligations where the parents previously expressed their unwillingness to consider the proposed placement. The school district in that case conceded that it had not formally offered the student a placement at the proposed school. *Union School District* held that "a school district cannot escape its obligation under the IDEA to offer formally an appropriate educational placement by arguing that a disabled child's parents expressed unwillingness to accept that placement." *Union Sch. Dist.*, 15 F.3d at 1526. The opinion continues:

> We find that this formal requirement has an important purpose that is not merely technical, and we therefore believe it should be enforced rigorously. The requirement of a formal, written offer creates a clear record that will do much to eliminate troublesome factual disputes many years later about when

---

[18] Whether the DOE complied with the regulations concerning delivery of the IEP -- C.F.R. § 300.345(f) (2005) and HAR § 8-56-36(i) -- and whether the failed delivery denied Matthew a FAPE is not before the court. The discussion of these regulations is included only to the extent that it assists in determining when a unilateral special education placement occurred.

placements were offered, what placements were offered, and
what additional educational assistance was offered to
supplement a placement, if any.

*Id.   Union School District* is not dispositive in this case.

Unlike *Union School District,* a FAPE *was* made in this case -- a
formal offer of FAPE was embodied in the November 4, 2005 IEP, although it was
not successfully delivered to the Plaintiffs until April 2006.[19]  *See N.R. v. San
Ramon Valley Unified Sch. Dist.*, 2007 WL 216253, at *12 (N.D. Cal. Jan. 25,
2007) ("This is not a case such as *Union* where the district utterly failed to make
any formal offer whatsoever. . . .  The fact that plaintiff's parents were not
involved in further formulation of the IEP . . . appears to be the result of plaintiff's
parents conscious decision to stop cooperating with the District. . . .  The District
should not be held accountable for plaintiff's parents' lack of cooperation.");
*Fermin v. San Mateo-Foster City Sch. Dist.*, 2000 WL 1130070, at *10-11 (N.D.
Cal. Aug. 4, 2000) ("The offer was also specific enough to allow both the parents
and the District to discuss the appropriateness of the District's proposed placement
at the administrative hearing. . . .  [T]he District gave reasonable prior written

---

[19]  Further, based on the facts of this case, the failed delivery attempt containing the IEP's
offer of FAPE does not implicate the underlying concerns expressed in *Union School District*.
The parties do not dispute what placement was offered, or what additional educational assistance
was offered to supplement the placement.  Further, Plaintiffs made it clear to the DOE that they
would not consider *any* DOE placement until the resolution of their pending due process hearing.

notice to Matthew's parents of the 1998-99 placement."); *see also Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 194-95 (2d Cir. 2005) ("[Plaintiffs] have not directed us to any statutory provision or regulation requiring that an IEP be produced at the time parents demand.  Instead, school districts must only ensure that a child's IEP is in effect by the beginning of the school year and that the parents are provided a copy . . . .  [T]he District fulfilled its legal obligations by providing the IEP before the first day of school."); *C.T. v. Lewiston Sch. Comm.*, 2000 WL 1052016, at *17 (D. Me. July 27, 2000) (finding that although the IEP received by the parents was missing several pages, this procedural violation alone was insufficient to warrant relief under the IDEA).

Although the IDEA contemplates parental participation in the development of an IEP, it also provides guidance to school districts where parents cannot or will not participate.  The relevant federal regulation provides examples of steps the DOE must take:

> (d) Conducting an IEP meeting without a parent in attendance. A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend.  In this case the public agency must have a record of its attempts to arrange a mutually agreed on time and place, such as--
>> (1) Detailed records of telephone calls made or attempted and the results of those calls;
>> (2) Copies of correspondence sent to the parents and any responses received; and

>   (3) Detailed records of visits made to the parent's home
>   or place of employment and the results of those visits.

34 C.F.R. § 300.345 (2005); *accord* HAR § 8-56-36 (g) (2000); *see also* 34 C.F.R.

§ 300.501(c)(4) (2005) ("A placement decision may be made by a group without

the involvement of the parents, if the public agency is unable to obtain the parents'

participation in the decision.  In this case, the public agency must have a record of

its attempt to ensure their involvement, including information that is consistent

with the requirements of § 345(d).").  The record reflects that the DOE maintained

"[c]opies of correspondence sent to the parents and any responses received."  The

record does not indicate whether any phone calls or visits were made to Plaintiffs

in an effort to affect delivery of the IEP.

On October 21, 2005, the Wheeler Elementary principal wrote to

Plaintiffs inviting them to Matthew's annual IEP meeting and provided three

possible meeting dates.  RE at ML 214.  Teresa responded by letter dated October

24, 2005, notifying Principal Lee that the parents would not be attending *any* IEP

meetings until a decision was issued in their pending due process hearing.[20]  RE at

ML 215.  The letter states:

---

[20] Although Teresa attended the prior IEP meeting in June 2005, during that meeting she read a prepared statement, informing the team of her pending due process request, and "chose to adjourn the IEP meeting."  ARA at 85.

> [A]s you are aware, a Due Process Hearing is being conducted as I am writing this letter to you.  Therefore, I am sure that you understand that we need to wait for the final decision from this hearing to conduct an Individualized Educational Program in Matthew's most current educational environment.  Additionally, all academic means and requests will be discussed at the next Individualized Educational Program meeting after the completion of the Due Process Hearing.  I will ensure you that we will be in contact after the final decision ha[s] been made.

*Id.*  Principal Lee responded on October 28, 2005:

> [A]lthough you have indicated that you do not plan to attend the IEP meeting until after the Due Process Hearing is complete, we are required to maintain a current IEP.  We will be meeting on Friday, November 4, 2005 to discuss Matthew's present levels of performance and update his Individualized Education Plan.  We would like to invite you to attend and to provide any current performance data you may have.

RE at ML 216.  The DOE was correct -- it was required to conduct an annual IEP.

*See* 20 U.S.C. § 1414(d)(4)(A).  The DOE documented its efforts to deliver the

November 4, 2005 IEP to Plaintiffs.  *See* RE at ML 218-221.  Based on the

correspondence in the record, it is clear that Plaintiffs refused to participate in

developing Matthew's November 2005 IEP and that they would not be

communicating further with the DOE until the next IEP meeting "*after* the

completion of the Due Process Hearing."  RE at ML 215 (emphasis added).

Plaintiffs had knowledge that the DOE would be formulating on November 4,

2005 an IEP for the 2005-2006 school year, but did not make an effort to accept

31

delivery of the November 7, 2005 certified mailing from the DOE.  Plaintiffs argue that they were not available to accept the letter; in fact, the record shows that they were in Honolulu for several days after receiving the pink slip and prior to Matthew's surgery.  *See* 11/02/06 Tr. Vol. I at 105, 107, 110.

The court finds that, under the unique circumstances of this case, by refusing to participate in the IEP process (pending a completion of the due process hearing), Teresa was in effect refusing any offer of FAPE.  Any parent considering accepting a possible offer of FAPE would certainly participate in the IEP process. By rejecting participation in *any* IEP meeting, Teresa was rejecting *any* offer of FAPE, at least pending a completion of the due process hearing.  In short, Teresa's October 24, 2005 letter to the principal is consistent with the parents' predetermination to keep Matthew in his home-based, private placement.

This premature rejection, coupled with the continuation of Matthew's home-based program, served as a constructive rejection of the DOE's offer of a FAPE, even where the parents did not receive the November 4, 2005 IEP until April 2006.  The DOE did not consent to Matthew's continued unilateral placement; the November 4, 2005 IEP placed him at Wheeler Elementary as did his previous November 12, 2004 and June 14, 2005 IEPs, which Plaintiffs had rejected.  The court considers this a sufficient unilateral special education

32

placement for the purposes of triggering the 90-day due process request requirement.

In other circumstances, more may be required of the DOE to affect actual delivery of an IEP, including documenting further attempts at delivery. Given Plaintiffs' decision not to cooperate, however, the circumstances here do not require more extraordinary efforts by the DOE to ensure that parents received a copy of the IEP.  Context matters and "[e]quitable considerations are relevant to fashioning relief" under the IDEA.  *Sch. Comm. of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 374 (1985).  Equitable relief is a fact-specific inquiry in which the "conduct of both parties must be reviewed to determine whether relief is appropriate."  *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994) (citations omitted).  Where parents have not predetermined that they would not participate and notified the DOE of their intention not to accept any placement offered, the DOE may have to do more than attempt delivery via certified mail, return receipt requested, when the mailing is returned to the DOE.  Those are not the circumstances of this case, however.

A contrary finding would subvert the procedural safeguards afforded parents under the IDEA and would permit knowledgeable parties to take advantage of the system.  If parents could refuse to participate in an IEP meeting

or refuse to consider any offer until further notice, all the while maintaining the student's private placement, they would be able to endlessly toll the deadline for seeking reimbursement when the DOE has unsuccessfully attempted to deliver them a formal offer of FAPE.

The court concludes that a unilateral special education occurred when Plaintiffs notified the DOE that they had predetermined that they would not participate in the IEP process in October 2005 and maintained Matthew' home-based program on November 4, 2005 at the expiration of the previous IEP. Because Plaintiffs did not file their request for a due process hearing until July 13, 2006 (more than 90 days after the unilateral special education placement), their request for reimbursement is untimely under HRS § 302A-443 (a)(2).

//

//

//

//

//

//

//

//

## V.  **CONCLUSION**

Based on the foregoing, the court AFFIRMS the Hearings Officer's decision denying Plaintiffs reimbursement for the cost of private placement for the 2005-2006 school year.  The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 8, 2007.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

Matthew L. et al. v. Dep't of Educ., Civ. No. 07-00009 JMS/BMK, ORDER AFFIRMING THE HEARINGS OFFICER'S OCTOBER 23, 2006 ORDER GRANTING RESPONDENT'S MOTION TO DISMISS WITH REGARD TO PETITIONERS' REQUEST FOR REIMBURSEMENT FOR PRIVATE PLACEMENT